IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES SPARKMAN,

    Plaintiff,                               No. CIV S-07-2568 DAD

    vs.

MICHAEL J. ASTRUE,                <u>ORDER</u>
Commissioner of Social Security,

    Defendant.
_____/

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and remand, and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is granted, defendant's cross-motion is denied, the decision of the Commissioner of Social Security (Commissioner) is reversed, and the matter is remanded for further proceedings consistent with this order.

**PROCEDURAL BACKGROUND**

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act (Act) on August 25, 2005, alleging disability beginning on July 6, 2004, based on bilateral carpal tunnel syndrome. (Transcript (Tr.) at 52-54, 64-70.) The application was denied initially on October 26, 2005, and upon reconsideration on March 30, 2006. (Tr. at 43-47, 41, 34-38.) Pursuant to plaintiff's timely request, a hearing was held before an administrative law

judge (ALJ) on March 7, 2007. (Tr. at 33, 273-303.) Plaintiff was represented by counsel and testified at the hearing. In a decision dated May 24, 2007, the ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
>
> 2. The claimant has not engaged in substantial gainful activity since July 6, 2004, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq*.).
>
> 3. The claimant has the following severe combination of impairments: bilateral carpal tunnel syndrome (CTS), bilateral moderately severe median neuropathy at the wrists and status post carpal tunnel release surgery (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently, walk/stand six hours, sit six hours, and occasionally grip, grasp, push, pull, pinch, and perform fine manipulative activities (these are supported by his bilateral CTS, bilateral moderately severe median neuropathy at the wrists and status post carpal tunnel release surgery), and he has no postural, visual, communicative, environmental, or mental limitations.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on January 4, 1957 and was 47 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

/////

    10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

    11. The claimant has not been under a disability, as defined in the Social Security Act, from July 6, 2004 through the date of this decision (20 CFR 404.1520(g)).

(Tr. at 16-23.)

On October 2, 2007, the Appeals Council denied plaintiff's request for administrative review of the ALJ's decision. (Tr. at 5-8.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on November 30, 2007.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive,

Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized in the Ninth Circuit as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff advances the following three arguments in support of his motion for summary judgment: (1) the ALJ rejected the opinions of plaintiff's treating physician without a legitimate basis for doing so, (2) the ALJ rejected plaintiff's statements regarding his pain and

functional limitations without providing clear and convincing reasons for doing so, and, (3) as a result of the erroneous rejection of the treating physician's opinions and plaintiff's statements, the ALJ failed to assess plaintiff's residual functional capacity properly, failed to show that plaintiff could perform substantial gainful work, and applied the grids rather than taking testimony from a vocational expert despite plaintiff's extensive non-exertional limitations. These arguments are addressed below.

**I. Assessment of Residual Functional Capacity**

At step four of the sequential evaluation process, the ALJ must determine whether the claimant is capable of performing his past work. If the ALJ determines that the claimant is not capable of performing his past work, the ALJ proceeds to step five to determine whether the claimant is capable of performing any other work. Both determinations are grounded on the claimant's residual functional capacity (RFC), which is defined as "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The assessment of a claimant's RFC must be "based on all the relevant evidence in [the claimant's] case record." Id. See also Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001). It is the duty of the ALJ to determine the claimant's RFC from the record. 20 C.F.R. § 404.1546(c).

Here, the ALJ determined that plaintiff has the physical RFC to lift 20 pounds occasionally[1] and 10 pounds frequently, to walk and/or stand for six hours in an eight-hour workday, to sit for six hours in an eight-hour workday, and to grip, grasp, push, pull, pinch, and perform fine manipulative activities occasionally, with no mental, postural, visual, communicative, or environmental imitations. (Tr. at 17.) The ALJ found that plaintiff's functional limitations precluded him from performing his past relevant work as a construction worker but did not impose significant limitations on his ability to work. (Tr. at 23.) The ALJ decided that plaintiff could perform a modified range of light to sedentary work. (Id.)

---

[1] "'Occasionally' means occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5 (Nov. 30, 1982).

1       **A. Rejection of Treating Physician's Opinions**

2       It is well established that the medical opinions of treating physicians are entitled
3  to special weight. Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Embrey v. Bowen, 849 F.2d
4  418, 421 (9th Cir. 1988). "As a general rule, more weight should be given to the opinion of a
5  treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at
6  830. "At least where the treating doctor's opinion is not contradicted by another doctor, it may
7  be rejected only for 'clear and convincing' reasons." Id. (quoting Baxter v. Sullivan, 923 F.2d
8  1391, 1396 (9th Cir. 1991)).

9       "Even if the treating doctor's opinion is contradicted by another doctor, the
10 Commissioner may not reject this opinion without providing 'specific and legitimate reasons'
11 supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler,
12 722 F.2d 499, 502 (9th Cir. 1983)). In order to meet the Commissioner's burden of setting forth
13 specific, legitimate reasons for giving less weight to the controverted opinion of a treating
14 physician, the ALJ must set out a detailed and thorough summary of the facts and conflicting
15 clinical evidence, state his or her interpretation of the evidence, and make findings. Thomas v.
16 Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). In developing the record and interpreting the
17 evidence, the ALJ must explain why significant probative evidence has been rejected and must
18 reach a decision supported by substantial evidence. Howard v. Barnhart, 341 F.3d 1006, 1012
19 (9th Cir. 2003); Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

20      Here, the ALJ gave "only minimal weight" to the opinions of Dale A. Adishian,
21 M.D., the orthopedic surgeon who began treating plaintiff on October 5, 2004, and was still
22 treating him when the ALJ's decision was issued on May 24, 2007. (Tr. at 212, 258-61.) Two
23 opinions rendered by Dr. Adishian are at issue. On December 22, 2005, after seeing plaintiff
24 regularly for more than a year, Dr. Adishian reported that plaintiff

25              has severe bilateral carpal tunnel syndrome that has been
                unresponsive to treatment. For this reason he underwent surgical
26              treatment for his left carpal tunnel in July of 2004. Unfortunately

> he's had a suboptimal outcome on the left side without overt surgical complications. His right hand, which has not had surgery, is still very symptomatic but it is better than the side that had surgery (which is his left side). Therefore, we have been reluctant to proceed with surgery on the right side.
>
> His nerve testing and his symptoms are consistent with bilateral carpal tunnel syndrome which affects his ability to use his hands for everyday activities and has prevented him from returning to his former level of work activity. Just about any use of his hand produces symptoms. He's had considerable treatment and there basically is not much left other than modifying his activities to keep his symptoms under control.

(Tr. at 197.) Fourteen months later, on March 1, 2007, Dr. Adishian reported that plaintiff

> has a diagnosis of bilateral carpal tunnel syndrome associated with severe bilateral median neuropathy at the wrists. He's had bilateral carpal tunnel releases with some improvement but still has unfavorable functional outcome to both hands and wrists. Because of the chronic underlying pain and loss of function, he's been going to Pain Management.
>
> There aren't any additional procedures that are anticipated. His ability to use his hands for everyday activities is poor. He is unable to return to his former level of work activity.

(Tr. at 258.)

The ALJ explained his rejection of Dr. Adishian's opinions as follows:

> As for the opinion evidence, the undersigned adopted the medical opinions of the SA [state agency] along with those identified in the CE [consultative evaluation] and by Dr. Renbaum as being the most reliable in establishing the claimant's overall residual functional capacity and were all in basic agreement as to his upper extremity limitations.
>
> As to the medical opinions of Dr. Adishian, the undersigned could not accord great or significant weight to them as they are not supported by his chart notes as set forth above; the most recent EMG/NCS in June 2006 revealed no evidence of severe median neuropathy, only moderate on the right and mild on the left; the claimant is able to perform daily activities at least consistent with light work, and the claimant indicated in a daily activities questionnaire that he could lift up to 50 pounds on the right and 20-25 on the left; his opinions are inconsistent with those of Dr. Kumar as well as Dr. Renbaum; they are inconsistent with the SA [state agency] determinations; and Dr. Adishian indicated the claimant's ability to use his hands for everyday activities was poor

7

> but did not quantify poor nor did he identify any specific functional limitations in terms of reaching, handling, fingering and feeling. Based upon these factors, his medical opinions made in December 2005 and March 2007 was [sic] given only minimal weight.

(Tr. at 22.)

The court turns first to the ALJ's assertion that Dr. Adishian's opinions are inconsistent with the opinions of four non-treating physicians. State agency physician W.S. Miller, M.D. merely reviewed the record in October 2005 and concluded that plaintiff had the RFC to perform light work with occasional fine fingering. (Tr. at 187-94.) After plaintiff requested reconsideration, state agency physician C. Eskarde, M.D. reviewed the record in February 2006 and determined that an orthopedic examination was needed. (Tr. at 215.) Rajeswari Kumar, M.D. performed such an examination on March 10, 2006. (Tr. at 216-22.) Dr. Kumar "indicated the claimant was independent in all activities of daily living and was able to drive short distances, switching hands"; reported normal examinations "except for positive Tinel and Phalen signs bilaterally, decreased grip on the left compared to the right, and reduced sensation in the median nerve distribution bilaterally"; diagnosed bilateral carpal tunnel syndrome status post carpal tunnel release on the left hand; and "indicated the claimant could perform medium work, occasionally griping [sic] and performing fine manipulative activities with both hands." (Tr. at 19.) On March 27, 2006, Dr. Eskarde reviewed Dr. Kumar's evaluation and affirmed the RFC determination made by Dr. Miller in 2005. (Tr. at 194, 224.) On January 11, 2007, Joel W. Renbaum, M.D., Agreed Medical Examiner in plaintiff's workers' compensation proceedings, performed an orthopedic permanent disability evaluation. (Tr. at 246-53.) Dr. Renbaum considered various objective factors, including tenderness to palpation around the healed incisions on plaintiff's wrists, decreased sensation in the right hand, decreased strength, and other postoperative changes that precluded repetitive gripping, grasping, pushing, pulling, and pinching; found plaintiff's subjective symptoms to be intermittent and slight to

/////

moderate on both sides; and determined that plaintiff's status was permanent and stationary. (Tr. at 20.)

The court finds that the opinions of the four non-treating physicians do not contradict Dr. Adishian's December 2005 diagnosis of severe bilateral carpal tunnel syndrome that was unresponsive to treatment and led to surgery on the left carpal tunnel in July 2004, or Dr. Adishian's 2005 assessment of a suboptimal outcome on plaintiff's left wrist and hand and a very symptomatic right hand, or Dr. Adishian's 2005 finding that plaintiff's nerve testing and symptoms were "consistent with bilateral carpal tunnel syndrome which affects his ability to use his hands for everyday activities and has prevented him from returning to his former level of work activity." Like Dr. Adishian, all four of the non-treating physicians found that plaintiff's ability to use his hands was limited and that the limitations precluded him from returning to his past work. (Tr. at 188 & 190, 220, 251.)

The opinions of the four non-treating physicians pre-dated Dr. Adishian's March 2007 opinion. During the year that passed between the opinions of Drs. Eskarde and Kumar rendered in March 2006 and the opinion of Dr. Adishian expressed in March 2007, the condition of plaintiff's right wrist and hand worsened, carpal tunnel release surgery was performed on plaintiff's right hand on August 7, 2006, with an unfavorable functional outcome, and plaintiff was referred to a pain management specialist due to chronic pain and loss of function in both hands. (Tr. at 239, 242, 258.) Although Dr. Renbaum evaluated plaintiff five months after surgery on the right hand, his evaluation of plaintiff was made prior to Dr. Adishian's March 2007 opinion and prior to the diagnoses and opinions of Dr. Dhruva, the pain specialist who began treating plaintiff on February 8, 2007. (Tr. at 242.)

The court finds that the opinions of the four non-treating physicians do not contradict Dr. Adishian's March 2007 diagnosis of bilateral carpal tunnel syndrome associated with severe bilateral median neuropathy at the wrists, or Dr. Adishian's assessment that the bilateral carpal tunnel releases provided some improvement but had an unfavorable functional

9

outcome on both hands and wrists, or Dr. Adishian's statements that plaintiff had been going to pain management for chronic underlying pain and loss of function, and no additional procedures were anticipated, or Dr. Adishian's opinions that plaintiff's ability to use his hands for everyday activities was poor and he was unable to return to his former level of work activity. (Tr. at 258.) Dr. Adishian's opinions differed from the opinions of the four non-treating physicians only with respect to the degree of plaintiff's limitations. The treating physician found in 2005 that "[j]ust about any use of [plaintiff's] hand produces symptoms" and there "is not much left other than modifying [plaintiff's] activities to keep his symptoms under control." (Tr. at 197.) The treating physician found in 2007 that plaintiff's "ability to use his hands for everyday activities is poor." (Tr. at 258.)

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." Lester, 81 F.3d at 831 (emphasis in original). See also Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990) (holding that the nonexamining doctor's opinion "with nothing more" did not constitute substantial evidence for rejecting the opinions of treating or examining physicians), and Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (holding that the report of the nontreating, nonexamining doctor, even when combined with the ALJ's own observation of the claimant at the hearing, did not constitute substantial evidence and did not support the ALJ's decision to reject the examining physician's opinion that the claimant was disabled). "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). "Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence or (2) findings based on objective medical tests that the treating physician has not herself considered." Id. (citations omitted).

/////

The court finds in this case that the opinions of the two state agency physicians do not, by themselves, constitute substantial evidence justifying the ALJ's rejection of Dr. Adishian's opinions. The court also finds that the opinions of the two examining physicians do not support the ALJ's rejection of Dr. Adishian's opinions because the examining physicians' opinions are not based either on diagnoses that differed from Dr. Adishian's and are supported by substantial evidence or on findings based on objective medical tests that Dr. Adishian had not considered. Moreover, the ALJ failed to evaluate the extent to which Dr. Adishian's opinions were consistent with the opinions and treatment records of Dr. Dhruva, plaintiff's treating pain specialist. For these reasons, the court finds that the ALJ's assertion of inconsistency with the opinions of non-treating physicians fails to establish a "specific and legitimate" or "clear and convincing" reason for rejecting Dr. Adishian's opinions.

The court has considered the ALJ's contention that Dr. Adishian "indicated the claimant's ability to use his hands for everyday activities was poor but did not quantify poor nor did he identify any specific functional limitations in terms of reaching, handling, fingering and feeling." (Tr. at 22.) However, the record does not reflect that the ALJ indicated to plaintiff or his attorney that Dr. Adishian's opinions were insufficient. The ALJ has a duty to develop the record, even where the claimant is represented by counsel, and that duty is triggered when the ALJ finds the record inadequate to allow for proper evaluation of the evidence. Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (holding that, where the ALJ needs to know the basis of a doctor's opinion in order to evaluate it, the ALJ has a duty to conduct an appropriate inquiry). Cf. Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (holding that, where the ALJ concluded that a form submitted by a doctor was too conclusory, the ALJ satisfied his duty by requesting a post-hearing evaluation to supplement the record, by requesting an additional inquiry into the basis for the doctor's opinion, and by leaving the record open for the doctor's response). The ALJ in this case should have sought clarification of Dr. Adishian's opinions and requested an evaluation of specific functional limitations. Absent development of the record, the

asserted failure to quantify "poor" and identify specific functional limitations is not a "clear and convincing" or "specific and legitimate" reason for rejecting Dr. Adishian's opinions.

The ALJ also asserted that Dr. Adishian's opinions were not supported by his chart notes. The administrative record includes Dr. Adishian's treatment records from October 5, 2004, through December 22, 2005, along with Dr. Adishian's procedure notes from the surgery performed on plaintiff on August 7, 2006. (See tr. at 197-213, 238-40.) The treatment records from 2004 and 2005 support Dr. Adishian's December 22, 2005 opinion. Dr. Adishian's treatment records from December 22, 2005 onward were not requested, and the ALJ did not advise plaintiff or counsel that the records were needed. Under these circumstances, the assertion that Dr. Adishian's opinions were not supported by his chart notes is not a "clear and convincing" or "specific and legitimate" reason for rejecting Dr. Adishian's opinions.

The ALJ also stated that the EMG/NCS conducted in June 2006 "revealed no evidence of severe median neuropathy, only moderate on the right and mild on the left." (Tr. at 22.) The assertion appears to be directed at Dr. Adishian's March 1, 2007, opinion that plaintiff has a diagnosis of bilateral carpal tunnel syndrome "associated with severe bilateral median neuropathy at the wrists." (Tr. at 258.) It appears that Dr. Adishian's statement refers to the entire history of plaintiff's bilateral carpal tunnel syndrome, which included EMG and nerve conduction studies in 2004 and 2005 that showed moderately severe median neuropathy at the wrists. (Tr. at 109, 186.) The fact that the EMG/NCS in June 2006 revealed moderate median neuropathy on the right and mild median neuropathy on the left is not a "clear and convincing" or "specific and legitimate" reason for rejecting Dr. Adishian's opinions.

Finally, the ALJ asserted that Dr. Adishian's opinions were inconsistent with plaintiff's ability to perform daily activities that were at least consistent with light work. (Tr. at 22.) In this regard, the ALJ relied heavily on a daily activities questionnaire completed by plaintiff in September 2005, a year prior to plaintiff's carpal tunnel release surgery on his right hand. (Tr. at 71-75.) While the ALJ considered plaintiff's responses to the form questions to be

evidence that plaintiff "could lift up to 50 pounds on the right and 20-25 on the left," (tr. at 22), examination of the questionnaire and the record as a whole reflects otherwise.  In response to a question about how his symptoms prevent him from carrying out a normal workday, plaintiff wrote in 2005 that "[a]ny type of gripping/twisting/lifting up to approx 50 lbs makes numbness and pain." (Tr. at 71.)  He indicated that things he did in 2005 on an average day, such as mopping floors, driving to the school to pick up his children, and occasionally making dinner, all caused pain and numbness.  (Id.)  In response to a question about what kind of things he could lift and how often, plaintiff wrote that he could lift about 50 pounds with his right hand and no more than 20-25 with his left hand, but the bigger the object and the more gripping and twisting required, the greater the pain.  (Tr. at 72.)  He indicated that he could carry a bag of groceries approximately three quarters full for 50 to 100 feet at most, depending on how heavy the bag was, and he had to use both hands if the bag was heavy.  (Id.)  He reported that he washed clothes and dishes and that he vacuumed using his right hand until it started going numb, at which time he had to stop for about 10 minutes, and that it took about 5 hours to do these basic chores. Raking leaves caused pain and numbness.  (Id.)  He could do chores for only about 15 minutes at a time and then had to take 30 minute breaks from two to four times a day.  (Tr. at 73.)

        At the administrative hearing in 2007, plaintiff testified that he suffers from pain in both hands 24 hours a day; he takes pain killers that affect his ability to drive; his wife changes the sheets; he does very limited laundry; he vacuums, but only a few minutes at a time and it takes several hours to vacuum the house; he does not mop floors; he avoids using his right hand at all and was told by the physical therapist that the muscle is gone; he does not scrub bathrooms; he cooks meals that can just be put in the oven; he can't mix food in a bowl; the children go with him to the grocery store to push the cart and lift things; he does not go to church or the movies; he no longer rakes leaves or shovels snow; he does not fish, hunt, or go camping; he is unable to ride a bicycle or a motorcycle or play any sports; he is unable to use a stationary bicycle because it hurts to grip the handlebars and his hands go numb; he gets no exercise; he does not do

volunteer work; he does not work on his truck or car; he has a little electric blower that weighs 6 or 7 pounds and can operate it for about three minutes at a time. (Tr. at 279-287.) He takes multiple medications, some of which make him dizzy, groggy, irritable, drowsy, or angry. (Tr. at 289-90, 297.) The ALJ's conclusion about plaintiff's ability to perform daily activities at least consistent with light work is not supported by substantial evidence in the record and is not a "clear and convincing" or "specific and legitimate" reason for rejecting Dr. Adishian's opinions.

In the absence of any legitimate reason for rejecting Dr. Adishian's opinions, the court finds that plaintiff is entitled to summary judgment on his claim that the ALJ failed to properly credit the opinions of treating physician Dr. Adishian.

### B. Rejection of Plaintiff's Statements Regarding Pain and Functional Limitations

Once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of his or her symptoms merely because the symptoms are unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Indeed, "'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" Light, 119 F.3d at 792 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). In evaluating a claimant's subjective testimony regarding pain and the severity of his symptoms, the ALJ may consider the presence or absence of supporting objective medical evidence, along with other factors. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); Smolen, 80 F.3d at 1285. Absent affirmative evidence of malingering, the reasons for rejecting a claimant's testimony must be clear and convincing. Morgan, 169 F.3d at 599.

Questions of credibility and the resolution of conflicts in the testimony are usually deemed functions solely of the Commissioner. Morgan, 169 F.3d at 599. The determination of credibility is a function of the ALJ acting on behalf of the Commissioner. Saelee, 94 F.3d at 522. In general, an ALJ's assessment of credibility should be given great weight. Nyman v. Heckler,

779 F.2d 528, 531 (9th Cir. 1985). The ALJ may employ ordinary techniques of credibility evaluation and may take into account prior inconsistent statements or a lack of candor by the witness. Fair, 885 F.2d at 604 n.5. The ALJ cannot, however, substitute his or her own observations for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

In the present case, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms he alleged, but found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 18.) The ALJ pointed to various progress notes indicating that plaintiff was improving with physical therapy, that plaintiff had experienced "good relief of symptoms with ultrasound and e-stim," and that plaintiff showed improved grip strength, improved wrist extension, and reduced pain at various times. (Id.) The ALJ also cited plaintiff's testimony about his daily activities. (Tr. at 20.) The ALJ stated that plaintiff's

> pain and upper extremity complaints as set forth above and in the record are not fully credible as the SA [state agency] determined in October 2005 the claimant could lift 20 pounds occasionally and 10 pounds frequently, walk/stand six hours, sit six hours, and could occasionally perform fine manipulation, but had no postural, visual, communicative, environmental, or other manipulative limitations (Exhibit 6F [tr. at 187-96]) and affirmed the determination in March 2006 (Exhibits 8F [tr. at 214-15] & 10F [tr. at 223-24]).

(Tr. at 21.) In addition, the ALJ cited various normal test results, pointed to the failure of the treating physicians to document functional limitations, noted that "there has been no additional surgery subsequent to July 2006," cited again the questionnaire completed by plaintiff in 2005, and asserted that medical records did not establish that plaintiff's medications were causing adverse side effects that would prevent him from working. (Tr. at 21-22.) On these grounds, the ALJ concluded that plaintiff's "pain and upper extremity complaints are found only partially credible." (Tr. at 22.)

The court finds that the ALJ did not offer clear and convincing reasons for rejecting plaintiff's testimony about his symptoms and their severity and persistence. The

evidence of occasional improvement and sporadic relief of symptoms does not accurately reflect the record as a whole and is contrary to plaintiff's documented need for pain management. The citation to the opinions of the two non-treating, non-examining state agency physicians about plaintiff's physical residual functional capacity in 2005 and 2006 is puzzling, since those opinions shed no light on the credibility of plaintiff's testimony about his symptoms. The state agency physicians did not have an opportunity to review medical records post-March 2006, to consider the treating physicians' opinions in 2007, or to evaluate the effects of plaintiff's second surgery. Nor could the state agency physicians evaluate plaintiff's pain. See 20 C.F.R. § 404.1545(e) (recognizing that one person with a disorder may be capable of the physical demands required for a certain level of work activity, while "another person with the same disorder, because of pain, may not be capable of more than the physical demands consistent with" a lesser level of sustained work activity or none at all).

With respect to plaintiff's daily activities, it is well established that social security claimants need not be "utterly incapacitated to be eligible for benefits." Fair, 885 F.2d at 603. See also Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). In general, the Commissioner does not consider "activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial gainful activities. 20 C.F.R. § 404.1572(c). See also 20 C.F.R. § 404.1545(e). The activities described by plaintiff in the 2005 questionnaire and in his testimony at the administrative hearing in 2007 do not detract from his credibility as to the intensity, persistence, and limiting effects of the pain from which he suffers.

In the absence of any evidence of malingering or any clear and convincing reason for finding plaintiff's statements not entirely credible, the court finds that plaintiff is entitled to

summary judgment on his claim that the ALJ improperly evaluated his testimony concerning his symptoms.

**II. Assessment of Ability to Perform Substantial Gainful Work**

The ALJ determined that plaintiff had the RFC to perform a modified range of light to sedentary work. (Tr. at 23.) The ALJ acknowledged that plaintiff could not perform the full range of light work but found that plaintiff's "additional limitations have little or no effect on the occupational base of unskilled light work." (Id.) The ALJ applied Medical-Vocational Rules 202.21 and 202.14 to find plaintiff not disabled. The ALJ noted that the state agency physicians had identified the following as jobs plaintiff could perform in the unskilled, light category, given the upper extremity limitations identified by those doctors: cleaner, housekeeper (any industry); counter clerk; investigator, dealer accounts. (Tr. at 23, citing Ex. 7E at 2 [tr. at 97].)

Above, the court has found that the ALJ failed to properly credit the opinions of plaintiff's treating physician and plaintiff's own statements regarding his subjective symptoms and functional limitations. As a result, the ALJ's assessment of plaintiff's RFC was not properly based on all relevant evidence in the record, and the ALJ reached a flawed conclusion about plaintiff's ability to perform substantial gainful work.

The court finds that the ALJ also erred in using the grids instead of obtaining the testimony of a vocational expert. At the fifth step of the sequential evaluation process, the Commissioner may satisfy his burden of showing that the claimant can perform other types of work in the national economy, given the claimant's age, education, and work experience, by applying the Medical-Vocational Guidelines, if appropriate, or by taking the testimony of a vocational expert. Burkhart, 856 F.2d at 1340; Polny v. Bowen, 864 F.2d 661, 663 (9th Cir. 1988). "The grids are an administrative tool the Secretary may rely on when considering claimants with substantially uniform levels of impairment." Burkhart, 856 F.2d at 1340. The grids reflect "major functional and vocational patterns" and incorporate the analysis of critical vocational factors, i.e., age, education, and work experience, in combination with the individual's

RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a). The grids may be utilized when they "'accurately and completely describe the claimant's abilities and limitations.'" Burkhart, 856 F.2d at 1340 (quoting Jones, 760 F.2d at 998). "When a claimant's nonexertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable. . . . In such instances, the Secretary must take the testimony of a vocational expert and identify specific jobs within the claimant's capabilities." Burkhart, 856 F.2d at 1340 (quoting Desrosiers v. Sec'y of Health & Human Svcs., 846 F.2d 573, 577 (9th Cir. 1988)). See also Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (holding that an ALJ may rely solely on the Medical-Vocational Guidelines, i.e., "the grids," only when a claimant can perform the full range of applicable work).

Pain has been recognized as a non-exertional limitation which may make reliance on the grids inappropriate. See Rollins v. Massanari, 261 F.3d 853, 863, n.7 (9th Cir. 2001); Desrosiers, 846 F.2d at 577; see also Reddick, 157 F.3d at 729; Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993). The same is true of severe manipulative limitations which may limit a claimant's functional capacity in ways not contemplated by the grids. See Bray v. Commissioner, 554 F.3d 1219, 1231 n.7 (9th Cir. 2009); Lounsburry v. Barnhart, 468 F.3d 1111, 1115 (9th Cir. 2006); see also 20 C.F.R. § 404.1569. It appears in this case that plaintiff's nonexertional limitations, imposed as a result of the chronic pain and manipulative limitations associated with his condition, are sufficiently severe that they may significantly limit the range of work permitted by his exertional limitations.

For the reasons set forth above, the court finds that plaintiff is entitled to summary judgment on his claim that the ALJ failed to properly assess his RFC, failed to show that he could perform substantial gainful work, and failed to obtain the testimony of a vocational expert.

/////

/////

/////

**CONCLUSION**

The court grants plaintiff's motion for an order remanding his claim to the Commissioner for further proceedings that address the defects raised by plaintiff. See <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1065 (9th Cir. 2006) (reversing and remanding for proceedings consistent with the court's decision that the ALJ improperly rejected the examining physician's opinion, which in turn made the ALJ's use of the Medical-Vocational Guidelines in his final disability determination improper). On remand, the record must be fully developed and proper credit must be given to the treating physicians' opinions and plaintiff's own statements regarding his symptoms and functional limitations. Plaintiff's RFC must be re-determined and, if the analysis proceeds to step five of the sequential evaluation process, the testimony of a vocational expert must be obtained.

At the time of the ALJ's decision, the record contained Dr. Dhruva's evaluation of plaintiff on February 8, 2007, but no additional records from this treating pain management specialist. (Tr. at 242-45.) The ALJ gave no weight to her diagnoses and opinions. (Tr. at 20, 22.) Dr. Dhruva's treatment notes for the period from March 1, 2007 through June 8, 2007 were subsequently submitted to and considered by the Appeals Council. (Tr. at 5-6, 8, 262-72.) On remand, the ALJ will have an opportunity to consider those additional medical records. The ALJ should also obtain all necessary additional treatment records and seek the treating physicians' opinions of plaintiff's functional limitations. The ALJ must also consider the treating physicians' diagnoses of reflex sympathetic disorder and complex regional pain syndrome (CRPS)[2] in light of Social Security Ruling 03-2p, which sets forth the Commissioner's

---

[2] Treating physicians Dr. Bradbury and Dr. Adishian diagnosed reflex sympathetic dystrophy and complex regional pain syndrome in February and March of 2005 (tr. at 111, 207, 208); a physical therapist noted symptoms of complex regional pain syndrome on February 15, 2005 (tr. at 146); Dr. Dhruva diagnosed complex regional pain syndrome on February 8, 2007 (tr. at 245); Dr. Dhruva's subsequent treatment records document plaintiff's diagnosis of complex regional pain syndrome/reflex sympathetic dystrophy of the right upper extremity, possibly spreading to the left upper extremity on June 8, 2007 (tr. at 271, 268, 265-66, 263). The terms reflex sympathetic disorder and complex regional pain syndrome describe a clinical syndrome

policies for evaluating claims based on those conditions.  SSR 03-2p, 2003 WL 22399117 (2003).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's July 9, 2008 motion for summary judgment for remand (Doc. No. 17) is granted;

2. Defendant's August 8, 2008 cross-motion for summary judgment (Doc. No. 21) is denied;

3. The decision of the Commissioner of Social Security is reversed; and

4. This case is remanded for further proceedings consistent with this order.

DATED: August 11, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/sparkman2568.order

---

that may develop following trauma to an extremity. Id. at *1. It is characterized by complaints of intense pain, and typically "the degree of pain reported is out of proportion to the severity of the injury sustained by the individual." Id.  The signs and symptoms may spread so that pain intensifies and involves other extremities. Id. at *2. Signs may not be present continuously or may be present at one examination but not at the next, as transient findings are characteristic of the syndrome. Id. at 4. "Careful consideration must be given to the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Id. at *7. Medical opinions from treating sources about the nature and severity of an individual's impairments may be entitled to controlling weight. Id. at *5 & 7.